**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

JOHN MOLLER II,

Plaintiff,

VS.                                                      Civil Action No.: 5:26-cv-224

BEXAR COUNTY HOSPITAL DISTRICT;
TOUCHSTONE STRATEGIES - STONE
OAK LLC D/B/A STONE OAK CARE CENTER,
Defendants.

**COMPLAINT**

AND NOW, comes the Plaintiff, John Moller II, by and through his undersigned counsel, Dawn

Smith, Esquire, Jacob Runyon, Esquire, and Constance Mutong, Esquire; and the law firm of

Smith Clinesmith, LLP, and files this Complaint for Defendants' violation of duties imposed

upon them under the Omnibus Budget Reconciliation Act of 1987 ("OBRA"); the Federal

Nursing Home Reform Act ("FNHRA"); 42 U.S.C. §1396r, et al.; and the implementing

regulations found at 42 C.F.R. §483, et al., against Defendants Bexar County Hospital District

and Touchstone Strategies - Stone Oak LLC d/b/a Stone Oak Care Center, hereinafter referred to

as "Defendants".

**Nature of Action**

1. This is a proceeding under 42 U.S.C. §1983 to remedy deprivations of rights under the

   Omnibus Budget Reconciliation Act of 1987; the Federal Nursing Home Reform Act;

   and the Federal Nursing Home Regulations as found at 42 C.F.R. §483, which amplify

   and implement the statutory rights created under OBRA and FNHRA.

**Jurisdiction and Venue**

2. As the instant case presents issues of federal law, jurisdiction is proper in this forum as a federal question, pursuant to 28 U.S.C. §1331.

3. Venue lies within this judicial district, since all of the actions complained of herein occurred within the Western District of Texas, San Antonio Division.

**Parties**

4. Plaintiff John Moller II is an adult who resides at 39 Justice Park Drive, Apartment 822, Houston, Texas 77092.

5. Plaintiff brings this action in his individual capacity to recover damages for personal injuries he sustained as a result of Defendants' conduct.

6. Defendant Bexar County Hospital District is a governmental entity with its principal address located at 4502 Medical Drive, MS 1-2, San Antonio, Texas 78229.

7. Defendant Bexar County Hospital District, as a governmental agency, at all times relevant hereto, was acting under the color of state law.

8. Defendant Bexar County Hospital District owns and operates Stone Oak Care Center, which is a skilled nursing facility located at 505 Madison Oak Drive, San Antonio, Texas 78258.

9. Stone Oak Care Center is owned by Defendant Bexar County Hospital District. Defendant Bexar County Hospital District is a proper party Defendant to this matter.

10. At all relevant times hereto, Stone Oak Care Center operated as a long-term care nursing facility.

11. At all times relevant hereto, Defendant Bexar County Hospital District operated Stone Oak Care Center as a "skilled nursing facility," as that term is defined in 42 U.S.C. §1395i-3.

12. At all times relevant hereto, Stone Oak Care Center participated in the Medicare and Medicaid programs.

13. At all times relevant hereto, Stone Oak Care Center was acting under the control of Bexar County Hospital District, and by and through its duly authorized agents and/or employees who then and there acting within the course and scope of their employment.

14. Defendant Bexar County Hospital District is a governmental entity organized and existing under the laws of the State of Texas. At all times relevant hereto, Defendant Bexar County Hospital District, acting through Stone Oak Care Center, was responsible for the policies, practices, supervision, implementation, and conduct of all matters pertaining to Stone Oak Care Center and was responsible for the appointment, training, supervision, and conduct of all Stone Oak Care Center personnel.

15. Defendant Touchstone Strategies - Stone Oak LLC d/b/a Stone Oak Care Center has a principal address at 250 W. Nottingham, Suite 200, San Antonio, Texas 78209.

16. Defendant Touchstone Strategies - Stone Oak LLC can be served via its registered agent, Bryon Sehlke, 250 W. Nottingham, Suite 200, San Antonio, Texas 78209.

17. At all times relevant to this Complaint, Touchstone Strategies - Stone Oak LLC owned, managed, operated, supervised, and/or staffed Stone Oak Care Center.

18. Defendants Bexar County Hospital District and Touchstone Strategies - Stone Oak LLC d/b/a Stone Oak Care Center are hereinafter collectively referred to as "Defendants".

**Statement of Claims**

19. All preceding paragraphs of this Complaint are incorporated herein, as if set more fully at length.

20. John Moller II (herein "Mr. Moller") was 53 years old when he was admitted to Stone Oak Care Center on October 2, 2024.

21. Mr. Moller was admitted directly from University Hospital in San Antonio, an acute care hospital, for post-acute skilled nursing care and rehabilitation.

22. Mr. Moller's admission followed a 19-day hospitalization at University Hospital from September 12, 2024, to October 1, 2024, for necrotizing soft tissue infection of the left foot.

23. During his hospitalization at University Hospital, Mr. Moller underwent six incision and drainage procedures with multiple compartment debridements in efforts for limb salvage.

24. Mr. Moller's last incision and drainage procedure was performed on September 27, 2024, which involved intermediate cuneiform exposure with fourth metatarsal exposure along the lateral aspect, resection of bone, application of skin graft, and negative pressure wound therapy.

25. On October 1, 2024, Mr. Moller was discharged from University Hospital to Stone Oak Care Center for continued wound vacuum-assisted closure (VAC) care three times per week for three months and podiatry follow-up.

26. Mr. Moller's admitting diagnoses at Stone Oak Care Center included necrotizing fasciitis, unspecified open wound of left foot, muscle weakness, other abnormalities of gait and mobility, type 2 diabetes mellitus with hyperglycemia, morbid obesity, acute kidney failure with tubular necrosis, idiopathic gout, olecranon bursitis of the right elbow, and acute respiratory failure with hypoxia.

27. At admission to Stone Oak Care Center, Mr. Moller had surgical wounds to his left foot with a wound VAC in place, was non-weight bearing on his left foot, and had a high fall risk status.

28. The discharge instructions from University Hospital specifically ordered wound VAC changes three times per week for three months and close wound care management.

29. On October 21, 2024, Mr. Moller's wound VAC was discontinued at Stone Oak Care Center, and Mr. Moller reported being unsure why it was discontinued.

30. According to Mr. Moller, he was not given any antibiotics for approximately four to five days following his admission to Stone Oak Care Center on October 2, 2024.

31. Mr. Moller's room was located in Room 607B in the 600 Hall, approximately eight to ten doors down from the nurse's station.

32. When Mr. Moller pushed his call light, it took 20 to 30 minutes for nursing staff to respond.

33. Medical records from Stone Oak Care Center documented that Mr. Moller was "bedfast" during his stay.

34. On October 8, 2024, physical therapy notes from Stone Oak Care Center documented that Mr. Moller reported "an unreasonable amount of pain" in his left foot that was not adequately relieved by medication and caused him to be unable to sleep.

35. On October 14, 2024, Mr. Moller complained of severe pain rated 9/10 to his right elbow, which appeared swollen and warm to the touch, suspected to be a gout flare.

36. Laboratory results from October 28, 2024 showed elevated inflammatory markers with C-Reactive Protein of 21.27 mg/dL and an elevated white blood cell count of 11.8.

37. On October 31, 2024, a venous Doppler ultrasound revealed deep venous thrombosis in Mr. Moller's left posterior tibial vein.

38. Following the diagnosis of deep venous thrombosis, Stone Oak Care Center initiated Eliquis anticoagulation therapy on October 31, 2024.

39. On November 1, 2024, Mr. Moller was discharged from Stone Oak Care Center to "Private home/apt. with no home health or hospice."

40. According to medical records, Mr. Moller reported that since the wound VAC was discontinued on October 21, 2024, he experienced increasing swelling and pain of the left foot.

41. On November 2, 2024, one day after discharge from Stone Oak Care Center, Mr. Moller presented to the Emergency Department at Memorial Hermann Memorial City Medical Center with a chief complaint of "Wound Infection Lt lower leg onset 1.5 month ago, left rehab in San Antonio today."

42. Mr. Moller reported to Memorial Hermann emergency room staff that he did not feel he was receiving proper care at Stone Oak Care Center, so he left San Antonio and came to Houston where his mother lives.

43. On admission to Memorial Hermann on November 2, 2024, Mr. Moller presented with fever of 100.8°F rising to 102.2°F, tachycardia with heart rate of 136, and left foot pain rated 10/10.

44. Physical examination of Mr. Moller's left foot on November 2, 2024 revealed two large incisions on the lateral and medial aspects of the left foot that were edematous with active drainage.

45. Laboratory findings on November 2, 2024, showed severe infection with white blood cell count of 19.72, lactic acid of 2.59, and procalcitonin of 0.71.

46. Mr. Moller was diagnosed with severe sepsis with acute organ dysfunction secondary to left foot infection.

47. MRI imaging on November 3, 2024, revealed extensive osteomyelitis involving the entire tarsal bones and 1st through 5th metatarsal bones, and dorsal soft tissue cutaneous ulceration with multiple loculated soft tissue fluid collections likely representing abscesses.

48. Blood cultures obtained on November 2, 2024, grew Staphylococcus aureus.

49. On November 6, 2024, Mr. Moller underwent a guillotine below-knee amputation of his left leg due to the extensive infection and osteomyelitis that made limb salvage impossible.

50. Surgical findings on November 6, 2024, revealed purulent discharge from the foot and extensive gangrene.

51. On November 8, 2024, Mr. Moller underwent formalization of the below-knee amputation with creation of anterior and posterior skin flaps.

52. Pathology examination of the amputated limb revealed a 15.0 cm leg with a 25.5 cm foot, exposed tibia and fibula bone, and a 5.0 x 4.0 x 1.5 cm abscess with purulent fluid.

53. The pathology report confirmed acute and chronic osteomyelitis and acute and chronic cellulitis with abscess.

54. Mr. Moller remained hospitalized at Memorial Hermann Memorial City Medical Center until November 15, 2024, receiving intravenous antibiotics and undergoing extensive rehabilitation.

**Stone Oak Care Center's Staffing Deficiencies**

55. Stone Oak Care Center gains much of its revenue from taxpayer dollars by participating in federal and state-funded Medicare and Medicaid programs.

56. As of December 18, 2025, Stone Oak Care Center is rated much below average overall by CMS, with a much below average rating for staffing levels.

57. Stone Oak Care Center had an average of 109.5 residents per day, well above the national average of 84.3 and the Texas average of 74.7.

58. Despite having significantly more residents than average facilities, Stone Oak Care Center provided only 3 hours and 9 minutes of total nurse staff hours per resident per day, compared to the national average of 3 hours and 54 minutes and the Texas average of 3 hours and 24 minutes.

59. Stone Oak Care Center's Registered Nurse hours per resident per day were critically deficient at only 17 minutes, compared to the national average of 41 minutes and the Texas average of 26 minutes.

60. Stone Oak Care Center's nurse aide hours per resident per day were 1 hour and 48 minutes, well below the national average of 2 hours and 21 minutes and the Texas average of 2 hours and 1 minute.

61. Stone Oak Care Center's total nurse staff hours per resident per day on the weekend were only 2 hours and 27 minutes, compared to the national average of 3 hours and 25 minutes and the Texas average of 2 hours and 58 minutes.

62. Stone Oak Care Center's total nursing staff turnover rate was 54%, above the national average of 46.4% and the Texas average of 50.9%.

63. Stone Oak Care Center's Registered Nurse turnover rate was critically high at 87.5%, far exceeding the national average of 43.6% and the Texas average of 50.7%.

64. Stone Oak Care Center's most recent health inspection on July 25, 2025 resulted in citations for deficiencies in care.

65. Clinical studies have shown that understaffing in nursing homes has led to reductions in the quality of care provided to residents, such as Mr. Moller.

66. Specifically, elevated rates of understaffing of both LPNs and nursing aides is associated with worsened quality of care provided to residents, including increased hospitalizations and emergency department visits.

67. Infections like the osteomyelitis and sepsis that Mr. Moller suffered are conditions which are directly associated with inadequate staffing levels and inadequate monitoring.

68. Here, Stone Oak Care Center provided much below average staffing to its residents, including Mr. Moller, thereby contributing to adverse patient outcomes.

69. This much below average staffing leads to increased infections and inadequate wound care management, and accordingly, at a minimum, increased the risk that Mr. Moller, a post-surgical patient with open wounds requiring specialized wound care, would develop a severe infection requiring amputation.

70. The documented 20 to 30 minute response time to Mr. Moller's call light demonstrates the direct impact of inadequate staffing on resident care and safety.

**COUNT I**
**Deprivation of Civil Rights Enforceable Via 42 U.S.C. §1983**

**SURVIVAL**

71. All of the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

72. At all times relevant to this Complaint, Defendant Bexar County Hospital District was acting under the color of state law and as an agent of the State of Texas.

73. The Defendants are bound generally by the 1987 Omnibus Budget Reconciliation Act (OBRA) and the Federal Nursing Home Reform Act (FNHRA) which was contained within the 1987 OBRA. See: 42 U.S.C. §1396r. The Defendants are also bound generally by the OBRA/FNHRA implementing regulations found at 42 C.F.R. §483, et seq., which served to further define and amplify specific statutory rights set forth in the above-mentioned statutes.

74. The statutes in question, as amplified and further defined by the detailed regulatory provisions, create rights which are enforceable pursuant to 42 U.S.C. §1983 as decided by the United States Supreme Court in Health and Hosp. Corp. of Marion Cty. v. Talevski, 599 U.S. 166 (2023), as the language of these regulations and statutory provisions clearly and unambiguously creates those rights.

75. The Defendants in derogation of the above statutes and regulations, and as a direct and proximate result of the following violations of those statutes and regulations, caused serious injury, harm, pain, suffering, and permanent disability to John Moller II.

76. The Defendants in derogation of the above statutes and regulations, and as a custom and policy, failed to comply with the aforementioned regulations as follows:

> a. By failing, as a custom and policy, to provide services with reasonable accommodations of the individual needs and preferences of residents, such as John Moller II, as required by 42 U.S.C. §1396r(c)(1)(A)(v)(I);
>
> b. By failing, as a custom and policy, to care for patients, including John Moller II, in a manner that promoted maintenance or enhancement of his life, as required

by 42 C.F.R. § 483.10, 42 C.F.R. § 483.24, 42 U.S.C. § 1396r(c)(1)(A)(xi), and 42 U.S.C. § 1396r(b)(1)(A), as pled herein;

c. By failing, as a custom and policy, to provide residents, including John Moller II, the necessary care and services to allow him to attain or maintain the highest practicable physical, mental, and psycho-social wellbeing, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(3)(A);

d. By failing, as a custom and policy, to conduct a comprehensive, accurate, standardized, and reproducible assessment of each resident's functional capacity, including John Moller II, as required by 42 U.S.C. § 1396r(b)(3)(A);

e. By failing, as a custom and policy, to periodically review and revise patients' or residents' written Care Plans, including John Moller II, by an interdisciplinary team after each of the resident's or patient's assessments, as described by 42 U.S.C. § 1396r(b)(3)(A), as required by 42 U.S.C. § 1396r(b)(2)(C);

f. By failing, as a custom and policy, to conduct an assessment of patients or residents, including John Moller II, as required by 42 U.S.C. § 1396r(b)(3)(A), promptly after a significant change in the resident's physical or mental condition, as required by 42 U.S.C. § 1396r(b)(3)(C)(i)(II);

g. By failing, as a custom and policy, to use the results of the assessments required as described above in developing, reviewing and revising patients' or residents', including John Moller II's Care Plan, as required by 42 U.S.C. § 1396r(b)(3)(D);

h. By failing, as a custom and policy, to provide necessary care and services to residents, including John Moller II, to attain or maintain the highest practicable physical, mental, and psychosocial well-being, in accordance with the comprehensive assessment and plan of care, as required by 42 U.S.C. § 1396r(b)(4)(A)(i);

i. By failing, as a custom and policy, to ensure that the personnel responsible for the care of residents, including John Moller II, was properly certified and/or re-certified as being qualified to perform necessary nursing services, as required by 42 U.S.C. § 1396r(b)(4)(B);

j. By failing, as a custom and policy, to provide sufficient nursing staff to provide nursing and related services that would allow patients or residents, including John Moller II, to attain or maintain the highest practicable physical, mental and psycho-social well-being, as required by 42 C.F.R. § 483.35 and 42 U.S.C. § 1396r(b)(4)(C);

k. By failing, as a custom and policy, to ensure that Stone Oak Care Center was administered in a manner that enabled it to use its resources effectively and efficiently to allow patients or residents, including John Moller II, to attain or maintain their highest practicable level of physical, mental, and psycho-social

wellbeing, as required by 42 C.F.R. § 483.70, 42 U.S.C. § 1396r(d)(A), 42 U.S.C. § 1396r(d)(1)(A), and 42 U.S.C. § 1396r(d)(1)(C);

l. By failing, as a custom and policy, to develop, implement, and maintain an effective training program for all new and existing staff, contractors, and volunteers, consistent with the individual's expected roles, as required by 42 C.F.R § 483.75 and 42 U.S.C. § 1396r(f)(2)(A)(i), as pled herein;

m. By failing, as a custom and policy, to develop and implement written policies and procedures that prohibit the neglect of residents such as John Moller II, as required by 42 U.S.C. § 483.12 and 42 U.S.C. § 1396r(b)(1)(A);

n. By failing, as a custom and policy, to provide nursing staff who are adequately trained and competent to provide nursing and related services to assure the safety and wellbeing of residents, including John Moller II, as required by 42 C.F.R § 483.35, as pled herein;

o. By failing, as a custom and policy, to ensure that Stone Oak Care Center was complying with the federal, state, local laws and accepted professional standards which apply to professionals providing services to residents, including John Moller II, and in operating such a facility as Stone Oak Care Center, as required by 42 U.S.C. § 1396r(d)(4)(A); and

p. By failing, as a custom and policy, to ensure that Stone Oak Care Center's administrator and director of nursing properly monitored and supervised subordinate staff, thereby failing to ensure the health and safety of residents or patients, including John Moller II, in derogation of 42 C.F.R. § 483.75 and 42 U.S.C. § 1396r(b)(B).

77. As a proximate result of Defendants' actionable derogation of their regulatory and statutory responsibilities as above-described, John Moller II was injured as previously referenced, and suffered pain, distress, and permanent disability as a result of Stone Oak Care Center's poor care and treatment, which allowed him to suffer harm as described herein. As such, Plaintiff has suffered, and is entitled to recover the following damages, as well as an award of reasonable counsel fees, pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988:

a. Pain, suffering, inconvenience, anxiety and nervousness of John Moller II;

b. Hospital, medical, and nursing expenses incurred on John Moller II's behalf;

c. Loss of earning capacity and future lost wages;

d. Permanent disability and disfigurement;

e. Other losses and damages permitted by law; and,

f. Any other damages as the Court sees fit to award.

## COUNT II
### Violations of Texas Health & Safety Code

78. All of the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

79. The Texas Health & Safety Code establishes minimum standards of care and rights for residents of nursing facilities in Texas. See Tex. Health & Safety Code §§ 242.001, et seq.

80. Texas Health & Safety Code § 242.062 requires nursing facilities to implement quality assurance and performance improvement programs designed to maintain or improve the quality of care furnished in the facility and to identify and correct deficiencies.

81. Texas Health & Safety Code § 242.063 requires nursing facilities to provide each resident with sufficient nursing staff and supportive personnel to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident.

82. Defendants violated these statutory duties by failing to provide Mr. Moller with adequate staffing, adequate monitoring of his post-surgical wounds, continuation of the prescribed wound VAC therapy as ordered by his discharging hospital, timely administration of antibiotics to prevent infection, and adequate response to call lights to address his medical needs.

83. As a direct and proximate result of Defendants' violations of the Texas Health & Safety Code, Mr. Moller suffered the injuries and damages alleged herein.

## COUNT III
### Medical Negligence

84. All of the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

85. Defendants owed Mr. Moller a duty to provide skilled nursing care in accordance with the applicable standard of care for skilled nursing facilities in Texas.

86. This duty included, but was not limited to: following the discharge plan and physician orders from University Hospital including wound VAC care three times per week; administering prescribed antibiotics in a timely manner; adequately monitoring post-surgical wounds for signs of infection; responding promptly to call lights; providing adequate staffing to meet the needs of a high-acuity patient with complex wound care requirements; and promptly addressing changes in condition.

87. Defendants breached their duty to Mr. Moller by discontinuing his wound VAC on October 21, 2024 without proper medical justification or follow-up care, failing to provide antibiotics for approximately four to five days after admission, failing to respond to his call light for 20 to 30 minutes, failing to adequately monitor and assess his deteriorating condition despite documented severe pain and swelling, and failing to provide sufficient nursing staff to meet his complex medical needs.

88. Medical records from Memorial Hermann reflect that the wound VAC was discontinued on October 21, 2024, and Mr. Moller experienced increasing swelling and pain of the left foot thereafter, indicating progressive infection.

89. The failure to continue the wound VAC therapy as specifically ordered by University Hospital for three months, combined with the failure to provide antibiotics and adequate wound monitoring, directly contributed to the progression of Mr. Moller's osteomyelitis and septic infection.

90. As a direct and proximate result of Defendants' negligence, Mr. Moller suffered a life-threatening septic infection, severe and preventable injuries requiring below-knee amputation, extreme pain and suffering, permanent disability, and loss of his livelihood.

## COUNT IV
### Corporate Negligence

91. All of the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

92. Defendants owed a duty to Mr. Moller to exercise reasonable care in the selection, training, and supervision of nursing staff and other employees; to maintain adequate staffing levels; to establish and enforce policies and procedures to ensure resident safety; to implement quality assurance programs; and to ensure compliance with physician orders and discharge instructions.

93. Defendants breached these duties by maintaining grossly inadequate staffing levels, as evidenced by Stone Oak Care Center providing only 17 minutes of Registered Nurse care per resident per day compared to the national average of 41 minutes, and total nursing staff hours of only 3 hours and 9 minutes per resident per day compared to the national average of 3 hours and 54 minutes.

94. Defendants breached these duties by failing to properly train and supervise staff, as evidenced by the discontinuation of ordered wound VAC therapy without proper

justification, failure to administer antibiotics as prescribed, and failure to respond to call lights in a timely manner.

95. Defendants breached these duties by failing to implement and enforce adequate policies and procedures to ensure compliance with physician orders, continuity of care between acute care and skilled nursing settings, adequate wound infection monitoring, and prompt response to residents' needs.

96. The 87.5% Registered Nurse turnover rate demonstrates systemic failures in hiring, training, and retaining qualified nursing staff capable of managing complex wound care and recognizing deteriorating conditions.

97. As a direct and proximate result of Defendants' corporate negligence, Mr. Moller suffered the injuries and damages alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff John Moller II respectfully requests that this Court:

a. Enter judgment in favor of Plaintiff and against all Defendants;

b. Award Plaintiff damages in excess of Seventy-Five Thousand Dollars ($75,000.00), including:

· Pain, suffering, inconvenience, anxiety and nervousness of John Moller II;

· Hospital, medical, and nursing expenses incurred on behalf of John Moller II;

· Loss of earning capacity and future lost wages;

· Permanent disability and disfigurement from below-knee amputation;

· Other losses and damages permitted by law; and

· Any other damages as the Court sees fit to award.

c. Award Plaintiff reasonable costs pursuant to 42 U.S.C. §1988;

d. Award pre-judgment and post-judgment interest as allowed by law; and

e. Grant such other and further relief as the Court deems just and proper.

WHEREFORE, the Plaintiff, John Moller II, demands damages of the Defendants Bexar County Hospital District and Touchstone Strategies - Stone Oak LLC d/b/a Stone Oak Care Center in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit and attorneys' fees.

**A JURY TRIAL IS DEMANDED.**

Respectfully submitted,

SMITH CLINESMITH LLP

BY: _/s/Jacob Runyon_____

Dawn M. Smith
State Bar No. 24079953
Jacob Runyon
State Bar No. 24083771
325 N. St. Paul Street, Suite 2775
Dallas, TX 75201
214-953-1900 Telephone
214-953-1901 Facsimile
txservice@fightingelderabuse.com
ATTORNEYS FOR PLAINTIFF